Thank you, Your Honor. Allow me to introduce myself. My name is Scott Hubbard. I represent Plaintiff and Appellant Lary Feezor. I know the courts read the briefs and are familiar with the issues. This one hinges on what constitutes an injury in fact under the ADA. I think the Ninth Circuit authority on this is pretty well established, so if the panel doesn't have any questions for me, I'll reserve the rest of my time and minutes. Well, tell me what claims are live, assuming we get overstanding. It looks to me like the claims for signage in the dressing rooms are moot. The counter, I believe, I was looking over my pleadings before coming up here. It appears the counter is moot also, but panel hardware is still alive and well. And it's worth noting that the mootness argument was based on an untimely expert disclosure three months late that we objected to, but the judge never ruled on. So the only claim we have left that's live are the handles, is that true? Only ADA claim, yes, that's live is the handle. I'm sorry, the only what claim? ADA claim, Your Honor. The state law claims are still alive and kicking. Right. And that would be against both defendants, your claim that no. Tell me about that issue. Which particular issue, Your Honor? The handles being inadequate. As I understand, there's not necessarily a specific requirement, and the district court said, well, you could get into the store, you could make it. That's a two-horned bull. The first one, the Department of Justice has given Chevron deference for interpreting the ADA, has interpreted panel handles as a no-no. And I can provide that. As a what? I'm sorry. Panel handles are a no-no. They've had interpretive bulletins where they've published it, they've said no, use these handles. So, primarily because it's difficult for wheelchair users to open. So that's the first question. Second question regarding ultimate access. This court has never required a disabled person to be absolutely prevented from using something to confer an injury. In fact, long v. coast, minimal inconvenience. That's probably the best example. So what does the record show in this case? The record shows that These would be the handles and your client's access. The declaration said that he encountered them, they were difficult for him to use, but he got in. That's the testimony in a nutshell, and I can bird dog it in a 28-J letter if the court would like. So that's where we are on injury. In fact, we're down to the handles and he had difficulty using them but got in. I think they are handles and the difficulty using them. Yes, because under Chapman v. Pier 1, the standard is did the plaintiff encounter a barrier, an ADAG violation, an architectural barrier that relates to their disability. So you basically set forth the requirements for standing, and they are both present. Okay. Any questions? All right. Thank you, Your Honors. Good morning, Your Honors. John Muir, Seifarth Shaw, on behalf of Eddie Bauer Storrs and Hanesbrand Direct. Picking up on where the Court left off regarding the panel handles, as the Court held in Chapman, the ADAG, A-D-A-A-G, ADA accessibility guidelines are so precise that they provide businesses with an exact road map of what is compliant and what isn't compliant. Mr. Hubbard referred to some Department of Justice guidelines that were not cited in his two briefs, and he didn't provide a cite to the Court now. But we do have the cite to the ADAG guidelines, which is section 4.13.9, which says that door handles have to be in a shape that is easy to grasp. There is no other requirements on that as to the size of the handles or whether they're round or square or anything like that. In this case, we have testimony from the disabled individual who visited this store, both stores, he testified, five times without a companion and opened the doors each time without any problem at all. And so we not only have the lack of violation of a standard, but we have the lack of injury in fact because the patron said, and this is at CR 76-3, it's his deposition testimony, page 26, lines 23 to 25, that he was easily able to open the doors and enter the store. A panel handle is a flat square that has room behind it so that if I can use this legal pad, this is the panel, and someone can reach behind and pull it, or they don't need to grasp, they can use a flat hand and pull it and open it up. And in this case, the patron is a world champion arm wrestler who testified that he has more than significant enough strength to open the doors of the store. As the Court held in the Chapman case, a person with a disability has to encounter a barrier that affects their particular disability. Mr. Fieser has no problem with the use of his hands. He has no problem with the use of his wrists. He is in a wheelchair, which means that he can't use his legs, but he has no problem with the use of his arms and hands, as shown by his arm wrestling title. And there is also no legal standard that either Eddie Bauer or Hanesbrand violated because the ADA accessibility guidelines do not exclude panel handles. And there hasn't been a court in this circuit or anywhere else, despite all of the ADA litigation, that has held that these types of handles somehow violate the accessibility standards. And Mr. Hubbard certainly doesn't even attempt to cite to anything that says that a court has held that these panel handles violate the accessibility standards. And so given that the other alleged barriers, by concession in the briefs and now at oral argument, have been remedied, we're left with only the panel handle issue. The panel handle issue is not a violation of the ADA accessibility guidelines. And even if it could be interpreted as a violation, was not under Chapman a barrier that related to this patron's disability so that it made it difficult for him to use the store, because he has no problem with his hands. And in fact, he testified that he had no problem opening the doors to the stores and visited the stores several times over and over without any barrier to access and without any problem with his full use and enjoyment. I think I'll start repeating myself if I keep repeating myself more. So unless the panel has questions, I'll sit down. All right. Very good. Addressing opposing counsel's argument seriatim, I would say that the Department of Justice interpretive manual was placed squarely before the district judge in both cases, Haynes and Eddie Bauer. Would you cite the record for us for that? Yes. As a matter of fact, I was just in the process of doing that when the opposing counsel sat down. So one moment so that I can look it up. We have a sheet you can provide to the clerk afterwards if you want. If it's all right, Your Honor, could I do a 28-J letter? I want to get back to the office. I try to be accurate. Okay. Okay. Second, ultimate access is not the standard that we use. I'm recalling Tennessee v. Lane where the disabled person was forced to crawl up a flight of stairs to get to a courthouse. Now, granted, that was Title II, but the Supreme Court basically said ultimate access isn't the standard. It's quality of access. Congress said the same thing. Let me go back just a little further to what Mr. Muir said. He says the ADA guidelines don't per se prohibit panel handles. Do you agree with that? One moment, please. I think that's what he said. The precise language, and forgive me, I'm reading from the 1991 standards, is that accessible panel handles shall have a shape that is easy to grasp with one hand and does not require tight grasping, tight pinching or twisting of the wrist to operate. Now, does the panel handle require any of those? Yes. Does it require grasping? It does. Well, he said you could just put your hand under and. This is actually let me answer the Court's question and then it dovetails into another point I wanted to make. With respect to this particular ADAG regulation that was drafted by the Department of Justice, the Department of Justice has granted great deference in the interpretation of the regulations that it draws, that it writes. At least that's the rule I was grown up with. So based on the interpretive manual that. So let me stop you there. You're conceding that on the face of the regulation that these handles are in compliance? No. I would concede. So just before you get into interpretive regulation, which I know you want to get into, how do these handles not comply with the provisions in 309.4? It's hard to describe without. Panel handles require pinching. And so that's part of the problem. They are the flat handles that you have to pinch. And it's not a question of hand strength and it's not a question of wrist strength. It's a question of balance. When you're in a wheelchair, you can't, if you try pulling them over, they flip. So that's the problem that panel handles face. So, yes, they require, under the plain language of the statute, panel handles require pinching and grasping. And if there was any ambiguity to that statement. Well, it says tight grasping, right? And then it says the force required to activate an operable part should be five pounds. Tight grasping, tight pinching, or twisting of the wrist to operate. Panel handles meet that definition. And if there's any ambiguity in it, it would be eliminated in the interpretive bulletin. So tell me what part of the record says that there was a balance issue. It wasn't the balance issue. I don't want to shoot from the hip on this one. Because there was at least 50 pleadings filed in relation to this motion for summary judgment. I know that there was extensive briefing on the panel handles. And with the court sleeve, I'll include the difficulty my client had in using them. Well, I don't want new material. And I think we can see if it's in there. I just wanted to know if you could point us to anywhere in the record where he said it was a question of balance. All right. One moment, Your Honor. All right. Doors, if you look to, and I'm just using this as an example, CR 92-1. This was, I believe, our op and a cross-subject summary judgment, but I don't know to which party, where we were discussing the subject on page 15 of 27. This also is where we included citation to the ADA guide for small businesses that was published. Are you talking about your brief? No, I'm talking about the clerk's record, Your Honor, docket number 91- or 92-1. This was what was presented to the district judge. My apologies. I should have been. That's why I wanted to include it in a 28-J letter, Your Honor. Well, all right. I'm sorry. Go ahead. I'm sorry. That's a brief. That is. That was our discussion. But in that brief, it cites to plaintiffs the deposition transcript at pages 51-1-11 and 53-1-8. And we described, we summarized his deposition where he says doors attached to panel handles are often difficult for someone in a wheelchair to operate because of the balance required. Okay. So there's, there's, there was, it was. What page is that on? That is on clerk's record 92-1, page 15 of 27. 16? 15. 15. Of 27. And counsel's right. This is a circuit-wide issue of first impression. Maybe I've got the wrong reference here, but I am looking at. Is this on the excerpts or are you? Is this a clerk's record or an ER? This isn't. This is, this is not an ER, Your Honor.  Okay. I got it. I got it. Okay. That's why 28J letter, I wanted to track it down for you. But this is a reference to declaration of Joe Card. Yes, but there's also a plaintiff's deposition reference in there, too. Okay. Very good. I have nothing else. Thank you, Your Honors. Thank you. The case, as heard, will be submitted for decision.
judges: Thomas, Tashima, McKeown